**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 98-10267
Summary Calender

_____


BARBARA C. TOLL,

Plaintiff-Appellant,

VERSUS

AMERICAN AIRLINES, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Texas
(4:96-CV-659-A)

_____

September 30, 1998

Before JOLLY, SMITH, and WIENER, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]


Barbara Toll, appearing _pro se_, appeals an adverse summary judgment on various employment discrimination claims. Finding no error, we affirm.


I.

Toll worked as a flight attendant for American Airlines, Inc. ("American"), which requires flight attendants to meet a weight

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

limit given the employee's height and sex.  If an employee exceeds the limit, the airline will suspend his continued employment in that position.

In December 1991, Toll exceeded American's weight limit for a female of her height.  Toll's supervisor gave her until November 1992 to conform.  After various extensions and delays, the airline suspended her in February 1995.  By July 1995, Toll had lost weight and met the requirement, so American placed her back in active service.

## II.

Toll sued, claiming that her five-month suspension violated the Americans with Disabilities Act ("ADA"), the Age Discrimination in Employment Act ("ADEA"), and title VII (sex discrimination). Appearing *pro se*, on August 4, 1997, Toll requested a delay in the proceedings because her attorney had died.  The district court granted the delay and set the trial date four months later.

In December 1997, American filed a motion for summary judgment.  On January 16, 1998, Toll again asked for a delay in responding to the motion, given the death of her attorney.  The court granted her an extension until January 30.  Toll never filed a response to the summary judgment motion.  On February 3, the court granted summary judgment, noting that Toll had failed to create a genuine issue of material fact on necessary elements of her causes of action.

### III.

Toll contends that the court erred by giving her too short a continuance to respond to the motion for summary judgment. Specifically, she argues that she received the court's January 16 order extending her time to reply to January 30 on January 22 and that an additional eight days, at that point, was insufficient.

The district court has discretion under FED. R. CIV. P. 56(f) to enlarge the time for a non-movant to obtain affidavits in opposition to a motion for summary judgment. We see no abuse of discretion here.

There is no indication that Toll ever intended to put forward additional evidence in opposition to the motion. As she acknowledges, she was not obliged to do so. *See* FED. R. CIV. P. 56(c). Instead, she chose to rely on the record, which the court found lacking. Toll's having made that choice apparent to all, the court correctly proceeded to rule on the motion after Toll had failed to submit anything by January 30.

### IV.

We review a grant of summary judgment *de novo*. *See Hanks v. Transcontinental Gas Pipe Line Corp.*, 953 F.2d 996, 997 (5th Cir. 1992). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The

3

party seeking summary judgment carries the burden of demonstrating that there is an absence of evidence to support the non-moving party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). After a proper motion for summary judgment is made, the non-movant must set forth specific facts showing that there is a genuine issue for trial. *See Hanks*, 953 F.2d at 997.

We begin our determination by consulting the applicable substantive law to determine what facts and issues are material. *See King v. Chide*, 974 F.2d 653, 655-56 (5th Cir. 1992). We then review the evidence relating to those issues, viewing the facts and inferences in the light most favorable to the non-movant. *See id.* If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *See Brothers v. Klevenhagen*, 28 F.3d 452, 455 (5th Cir. 1994).

V.

To understand Toll's evidentiary burden better, we first review the ADA's mandate:[1] "No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions,

---

[1] Although Toll's complaint alleged various causes of action in addition to her ADA claim, her appellate brief, and American's in reply, discuss her ADA claim exclusively. Therefore, even construing her brief liberally, as we must with *pro se* litigants, we find that she has waived any appeal of her title VII and ADEA claims. *See Price v. Digital Equip. Corp.*, 846 F.2d 1026, 1028 (5th Cir. 1988) (per curiam) ("Although we liberally construe the briefs of *pro se* appellants, we also require that arguments must be briefed to be preserved." (citations omitted)).

4

and privileges of employment."  42 U.S.C. § 12112(a).  Therefore, to invoke the ADA's protections, Toll is obliged to make an initial showing that she has a "disability."[2]

The ADA defines a "disability" as follows:

The term "disability" means, with respect to an individual SS

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;

> (B) a record of such an impairment; or

> (C) being regarded as having such an impairment.

42 U.S.C. § 12102(2).  Toll alleges that she is disabled under §§ 12102(2)(A) and (C).  Under § 12102(2)(A), she alleges that she has a physical impairmentSSa chemical sensitivity in her body that causes weight gainSSthat limits one or more of her major life activities.  Under § 12102(2)(C), she alleges that American regarded her as having this physical impairment that substantially limits one or more of her major life activities.

Toll generally alleges that her body's chemical sensitivity

_____

[2] A plaintiff can prove discrimination under the ADA either directly or indirectly.  Directly, he must show that he is disabled under the act; that with or without reasonable accommodation he could perform the job; and that the employer discharged him because of his disability.  *See* 42 U.S.C. § 12112(a); *Taylor v. Principal Fin. Group, Inc.*, 93 F.3d 155, 162 (5th Cir.), *cert. denied*, 117 S. Ct. 586 (1996).

Alternately, he can use a burden-shifting analysis to make out a *prima facie* case of discrimination.  *See, e.g.*, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  To do so, he must show that he is disabled under the act; that he is qualified with or without accommodation; that he was subject to an adverse employment action; and that he was replaced with a non-disabled person.  *See id*; *Burch v. Coca-Cola Co.*, 119 F.3d 305, 320 (5th Cir. 1997), *cert. denied*, 118 S. Ct. 871 (1998); *Daigle v. Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir. 1995).  Both methods, however, require that the plaintiff make an initial showing that he is "disabled," as statutorily defined.

and its attendant weight gain substantially limits her "major life activities." It seems, however, that the major life activity of "working" is the only one at issue in this case. *See* 29 C.F.R. § 1630.2(i) ("*Major Life Activities* means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.").[3]

The EEOC regulations strictly construe "substantially limits the major life activity of working," stating:

> (3) With respect to the major life activity of *working*SS
>
>> (i) The term *substantially limits* means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.
>>
>> (ii) In addition . . ., the following factors may be considered in determining whether an individual is substantially limited in the major life activity of "working":
>>
>>> (A) The geographical area to which the individual has reasonable access;
>>>
>>> (B) The job from which the individual has been disqualified because of an impairment, and the number and types of jobs utilizing similar training, knowledge, skill or abilities, within that geographical area, from which the individual is also disqualified because of the impairment (class of jobs); and/or
>>>
>>> (C) The job from which the individual has been disqualified because of an impairment, and the number and types of other jobs not

---

[3] In any event, we discern no evidence in the record that Toll's chemically sensitive induced weight gain "substantially limits" any of her other "major life activities."

6

> utilizing similar training, knowledge, skills
> or abilities, within that geographical area,
> from which the individual is also disqualified
> because of the impairment (broad range of jobs
> in various classes).

29 C.F.R. § 1630.2(j)(3). Although what "substantially limits [the] major life activity [of working]" ultimately means is determined on a case-by-case basis, *see Byrne v. Board of Educ.*, 979 F.2d 560, 565 (7th Cir. 1992); *Forrisi v. Bowen*, 794 F.2d 931, 933 (4th Cir. 1986), the statutory language plainly does not prevent all adverse employment actions against a physically or mentally impaired employee.

Thus, such an employee does not obtain tenure at his position because of his impairment. *See Ellison v. Software Spectrum, Inc.*, 85 F.3d 187, 192 (5th Cir. 1996); 29 C.F.R. § 1630.2(j)(3)(i). Instead, the "substantially limits" statutory language, as it relates to "working," strikes a balance: It allows a disabled person a foot in the door of the labor market, *see Burch*, 119 F.3d at 314, while at the same time, it tries not to impose an undue burden on an employer's freedom to make employment decisions it feels are in the best interests of its business, *see Tudyman v. United Airlines*, 608 F. Supp. 739, 747 (C.D. Cal. 1984) (Rehabilitation Act) ("[P]rivate employers are generally free to be arbitrary and even capricious in determining whom to hire . . . .").

Once American moved for summary judgment asserting that Toll lacked the evidence necessary to prevent summary judgment, Toll was obliged to offer enough evidence to show that there was a genuine

fact issue that she had a disability, even assuming that her body's chemical sensitivity and its attendant weight gain were to constitute a "physical impairment" under the ADA. *Cf. Hanks*, 953 F.2d at 997. More specifically, under § 12102(2)(A), Toll would have to offer some evidence that (1) she could not obtain a position in the geographical area because of her chemical sensitivity; (2) she could not obtain a job in the class of jobs utilizing similar skills and trainingSShere, as a flight attendantSSbecause of her physical impairment; or (3) she was unable to obtain a job in the same geographical area that did not utilize the same skills or training, but for which her physical impairment also disqualified her. *Cf.* 29 C.F.R. § 1630(j)(3)(ii)(A)-(C). To prevent summary judgment under § 12102(2)(C), she would have to offer some evidence that even if she *could* obtain the positions outlined above, American *thought* she could not do so because of her impairment. *Cf. id.*

Toll offers no evidence in the summary judgment record to show that she was unemployable in the geographical area because of her impairment or that her impairment disqualified her from this class of jobs, or from a broad range of jobs in various classes. She similarly offers no evidence to show that American believed she was unemployable in the relevant area labor market or elsewhere, or that she could not obtain work in this or another class of jobs.[4]

---

[4] Toll contends that the district court granted summary judgment solely because she had failed to respond to the motion. This is not a fair reading of the court's opinion, which states that the court had "considered the motion, the record, the summary judgment evidence, and applicable authorities."

(continued...)

This particular job carried with it particular appearance standards.  *Cf. Tudyman*, 608 F. Supp. at 745 (upholding an airline's weight limit for flight attendants).  When Toll failed to meet these standards, she was suspended.  "The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working."  29 C.F.R. § 1630.2(j)(3).  Accordingly, Toll cannot support her claim that she is "disabled" under the ADA.

AFFIRMED.

---

(...continued)
    Toll's failure to respond to the motion was not the cause-in-fact of the district court's decision.  Her claims failed before that courtSSas well as in this courtSSbecause the evidence in the record cannot support any rational juror's finding that she is "disabled" under the ADA.